# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-cr-20235-JPM |
| | ) | |
| STEVEN SHAW, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTION TO SUPPRESS**
_____

Before the Court is Defendant Steven Shaw's Motion to Suppress (Docket Entry ("D.E.") 41), filed January 12, 2010. The Court referred the Motion to the Magistrate Judge for Report and Recommendation. (D.E. 42.) An evidentiary hearing was held before the Magistrate Judge on February 19, 2010. (See D.E. 51.) The Report and Recommendation ("Rep. and Rec.") was received on August 19, 2010. (D.E. 63.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress. (Id. at 1.) On September 2, 2010, Defendant filed his Objections to the Magistrate Judge's Report and Recommendation. (D.E. 65.) The Government responded in opposition to Defendant's objections on September 9, 2010. (D.E. 66.) Upon de novo review, having considered the arguments of the Defendant and the Government, the Court adopts the Magistrate Judge's

Report and Recommendation in its entirety and DENIES Defendant's Motion to Suppress.

**I. Factual Findings**

On October 28, 2008, the Shelby County Sheriff's Department assigned Officer Harold Cheirs ("Officer Cheirs") to serve a valid arrest warrant on Phyllis Brown ("Brown") at 3171 Hendricks Avenue. (D.E. 52, Feb. 19, 2010 H'rg Tr. ("Tr.") 33.) Upon arriving at the location, Officer Cheirs and Officer Robinson found two homes with an address of 3170 Hendricks, and no home with an address of 3171 Hendricks. (Tr. 34.) Among the two houses, the officers chose to approach the house with signs of activity, an open front door, and several cars parked in front. (Tr. 34.) Officer Cheirs testified that he would first attempt to "make contact" with the inhabitants and then investigate outside the home if unable to do so. (Tr. 33.)

Officer Cheirs, dressed in his police uniform, proceeded to the back of the house and knocked on the door. Stephanie Harris ("Harris") opened the door and slammed it in his face. (Tr. 35.) Officer Cheirs believed, however, that the black female who slammed the door in his face was Phyllis Brown, the subject of the arrest warrant.[1] (Tr. 56-57.) He alerted Officer

---

[1] Officer Cheirs testified that he could not recall whether he had seen a photo of Brown, whether he "pulled her booking photo," whether any photo was attached to the arrest warrant, or whether he did any further search to obtain a photo. (Tr. 56-58.)

2

Robinson of what occurred and knocked again. Harris did not open the back door of the house until seven or eight minutes had passed. (Tr. 35.) In the meantime, Officer Cheirs observed "a couple people in the living room, people in the kitchen area and stuff on . . . scales on the table." (Tr. 35.)

Officer Cheirs testified that he did not go in the house at this moment for safety reasons, but was "kind of half and half" in the doorway so that "[t]hey couldn't close the door on [him]." (Tr. 53.) He announced that "we got a warrant for this address" and asked "who all lives here" and "who's the owner?" (Tr. 35.) Harris identified herself as a resident, but none of the occupants clarified who owned the house. (Tr. 36.) When Harris asked what address Officer Cheirs was looking for, he replied 3170 Hendricks, instead of the 3171 Hendricks address on the warrant. (Tr. 36-37, 55-56.) Officer Cheirs testified that he did so because in his experience people often lie "when you are looking for a particular address," and he sought to elicit the address of the premises. (Tr. 37-38.) Harris told him that the address was 3171 Hendricks, and "then everybody else said 3171." (Id. 36, 38, 59.) In light of this comment and the suspicious activity he observed, Officer Cheirs "believed that it was the correct address at that time." (Tr. 38.)

Officer Cheirs then announced that he had an arrest warrant for the address. He asked the occupants to "come up front" and

3

"have a seat on the couch." (Tr. 36, 38.) He remained in the front room with the individuals gathered there while Officer Robinson walked toward the back bedroom area in search of other inhabitants. Officer Robinson noticed a string to the attic and pulled it, believing that someone may be hiding in the attic. Subsequently, three to four bags of a "white powder and a plastic silhouette just fell from the ground," which "appeared to be cocaine." (Tr. 40.)

The officers then placed all the males in handcuffs. (Tr. 41, 61.) Officer Cheirs testified that he still believed he was at 3171 Hendricks at this time and no one had informed him otherwise. (Tr. 40-41.) After twenty or thirty minutes of waiting, Officer Cheirs was asked for the first time by one of the house's inhabitants upon whom the officer was seeking to serve the arrest warrant. (Tr. 41, 61.) Officer Cheirs said Phyllis Brown, and one of the occupants responded that she was "across the street." (Tr. 41, 61.)

Officer Bartlett subsequently arrived and after observing the evidence, he contacted Detective Page, who started writing the search warrant. (Tr. 69.) The narcotics officers executed the search warrant approximately three hours after Officers Cheirs and Robinson initially arrived at the scene. (Tr. 69.) Defendant and other subjects were then transported to 1080 Madison Avenue for questioning by the police. (Tr. 69-70.)

4

Defendant, after being advised of his Miranda rights, spoke with Officer Bartlett and confessed to the drugs and gun found at the scene. (Tr. 70.)

**II. Standard of Review**

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

The Court is not required to review those aspects of the report and recommendation to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and rulings of the Magistrate Judge to which a party files no specific objection. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

**III. Analysis**

In his Report and Recommendation, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied. The Magistrate Judge made three findings: (1) Defendant has standing

to bring the instant Motion to Suppress[2] (Rep. and Rec. 9-14); (2) because <u>Steagald</u> is not controlling in this context, an arrest warrant alone justifies the officers' entry into the home if they had a reasonable belief that the subject of the arrest warrant was in the residence at the time[3] (<u>Id.</u> at 15); and (3) "Officers Cheirs and Robinson acted lawfully in searching the residence for Brown in accordance with the arrest warrant and their reasonable belief that the subject was within the residence." (<u>Id.</u> at 17.)

In his objections to the Magistrate Judge's Report and Recommendation, Defendant argues that (1) the officers conducted an improper search of the house under <u>Steagald</u> because they failed to obtain a search warrant (D.E. 65, Def.'s Objections to the Magistrate Judge's Report and Recommendation on Def.'s Mot. to Suppress ("Def.'s Objections") 8-10); (2) Officers Cheirs and Robinson developed a reasonable belief that they were at 3171 Hendricks only after they entered it and the subjects lied in telling the officers they were at the correct address" (<u>Id.</u> at 4); and (3) the report failed to consider that the officers could have taken other steps short of approaching the house to

---

[2] The government does not object to the Magistrate Judge's finding of standing (D.E. 66.), and the Court agrees that Defendant has standing to challenge the suppression of evidence in this case. (<u>see</u> Rep. and Rec. 9-14.)
[3] The Magistrate Judge concluded that the officers "had [the] reasonable belief that this residence was not even a third-party residence, but instead that it was Brown's own residence." (Rep. and Rec. 17.)

6

verify the correct address and the subjects.[4] (Id. 10.) The Court will address the Defendant's objections in turn.

**A. No Need for a Search Warrant**

An arrest warrant provides the authority for police officers to enter a home without a search warrant if the officer reasonably believes the suspect is inside. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is inside." Payton v. New York, 445 U.S. 573, 603 (1980).

The general rule is that Officers may not enter a home of a third party based solely on a valid arrest warrant. If they believe the subject of an arrest warrant is located within the home of a third party, they must obtain a search warrant prior to entry. Steagald v. United States, 451 U.S. 204, 213-14 (1981). Despite this rule, "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at the time." United States v. Pruitt, 458 F.3d 477, 483 (6th Cir. 2006) (emphasis added); see

---

[4] Defendant did not request that the Court rehear any trial testimony. (Def.'s Resp. 4 fn. 1.)

also El Bey v. Roop, 530 F.3d 407, 415 (6th Cir. 2008); United States v. Bervaldi, 226 F.3d 1256, 1267 n.11 (11th Cir. 2000).

Defendant argues that the Magistrate Judge did not properly apply Steagald when she found the entry proper based on the officers' reasonable belief that they were at the home of the arrestee. Defendant objects that the officers conducted an improper search of the house under Steagald because they failed to obtain a search warrant. (Def.'s Objections 8-10.)

Steagald is not on point for the issue in this case, but rather addresses the situation where officers *know* that they are in the home of a third party and believe the suspect to be inside. The Sixth Circuit in El Bey held that when officers believe that they are entering the home of the subject of an arrest warrant, officers need only have a reasonable belief that the subject is inside. El Bey, 530 F.3d at 415; Bervaldi, 226 F.3d at 1267 n. 11. El Bey applies in this context where Officers Cheirs and Robinson entered the house under the mistaken belief that they were entering the home of the suspect for whom they had an arrest warrant. See El Bey, 530 F.3d at 415 (quoting Bervaldi, 226 F.3d at 1267 n. 11) ("the officers had a reasonable belief that the residence searched was the residence of the subject of the arrest warrant, 'not some third party's residence as in Steagald,' and . . . Steagald was therefore inapplicable").

The Court adopts the finding of the Magistrate Judge that the reasonable belief standard of Payton and El Bey applies to this case, rather than the Steagald standard. The Court must now consider whether the officers held a reasonable belief that they were investigating the correct address.

**B. Officers' Reasonable Belief**

The El Bey standard is satisfied when police officers reasonably believe that: 1) the subject of an arrest warrant lived at the home that was entered by police, and 2) the subject was inside when the officers entered the home. 530 F.3d at 416; Bervaldi, 226 F.3d at 1263. "[C]onsideration of common sense factors and the totality of the circumstances is sufficient to formulate a reasonable belief that a suspect is on the premises." Pruitt, 458 F.3d at 483 (citations omitted).

Defendant argues that the "Magistrate also failed to examine all of the facts pertinent to the conclusion that the Officers' held a reasonable belief that the residence was not a third-party residence, and that the subject of the warrant was located at the premises." (Def.'s Resp. 5.) He objects that Officers Cheirs and Robinson developed a reasonable belief that they were at 3171 Hendricks only "after they entered it and the subjects lied in telling the officers they were at the correct address." (Def.'s Objections 4.)

The Court does not agree. The officers knew that Brown, the target of the arrest warrant, lived at 3171 Hendricks. This information on its own was sufficient to give the officers a reasonable belief that Brown was inside the house. See Tyson v. Willauer, 289 F. Supp.2d 190, 197 (D. Conn. 2003). Despite finding two houses that could have been 3171 Hendricks, the officers chose to investigate the house that had signs of activity, an open front door, and cars parked in front. See United States v. Route, 104 F.3d 59, 62-63 (5th Cir. 1997) (holding officers had a reasonable belief that the suspect was home because of a car in the driveway and the sound of a television). When Officer Cheirs knocked on the door and a black female slammed the door in his face, he became understandably suspicious that the woman seeking to evade law enforcement was Phyllis Brown. Officer Chiers knocked again and waited seven to eight minutes before anyone responded. While waiting and with the front door of the house open, the officers observed people in the living room and kitchen area, and scales on the tables.[5]

As El Bey noted, "law enforcement officers often rely on independent investigation and observations of the premises to determine whether a suspect is actually inside before entering." 530 F.3d at 417 (citations omitted). The officers' observations

---

[5] See United States v. Santana, 427 U.S. 38, 42 (1976) (holding that the doorway to a house is "in a 'public' place," making persons in the home subject to arrest without a warrant allowing entry into the home).

10

gave them sufficient reasons to believe that they were at the correct house, and that Brown was inside. Officers Cheirs and Robinson took all of the actions noted above prior to beginning any search of the residence.

Defendant argues that this Court should find a Fourth Amendment violation because the "home was invaded by law enforcement prior to any discussion with the occupants regarding the address and prior to the Officers forming any belief at all with regards to where they were." (Def.'s Objections 1.) Defendant wrongly disregards all of the actions by police prior to entering the house, which, as discussed above, reasonably justify the officers' belief that they were in the correct house and that Brown was inside.

Defendant asserts that a Fourth Amendment violation occurred when the officers stepped halfway through the back door of the house after seven or eight minutes passed and Harris opened the door. The Supreme Court has never endorsed such a bright-line rule. See Delaware v. Prouse, 440 U.S. 648, 654 (1979) ("the permissibility of a particular law enforcement practice is judged by balancing its intrusion on . . . Fourth Amendment interests against its promotion of legitimate governmental interests"). Officer Cheirs made a limited entry partially through the back door of the home for a limited duration and announced that he had a warrant. "When faced with

special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." Illinois v. McArthur, 531 U.S. 326, 330 (2001). Officer Cheir's de minimus entry into the home does not constitute a Fourth Amendment violation,[6] especially since he immediately asked who lived in the house. The occupants' response that Brown was at 3171 Hendricks solidified the reasonableness of his belief that he was at the correct address, even though the occupants misled him into thinking he was at the correct address.

The Court agrees with the Magistrate Judge that because the officers shared the reasonable belief that they were at the correct house, and that Brown was present inside, the officers did not commit a Fourth Amendment violation.

**C. Officers' Proper Police Tactics**

Defendant objects that the Magistrate Judge's report failed to consider other steps the officers could have taken in attempting to verify the correct address, such as comparing the addresses of several houses or obtaining a copy of Brown's booking photograph. (Def.'s Objections 7.) The Court does not agree. The officers were not constitutionally required to take

---

[6] See Artes-Roy v. City of Aspen, 31 F.3d 958, 962-63 (10th Cir. 1994) (finding de minimus violation when building code inspector pushed open door, stepped inside, and saw defendant).

any additional steps in verifying the address. They did not need to justify approaching the house to begin with. See El Bay, 530 F.3d at 417 (noting that "police officers are not precluded from knocking on the door of a residence in an effort to gather information supporting a reasonable belief that the suspect is inside").

The Court has already concluded that the officers had a reasonable belief that they had found the correct house, and that the subject of the arrest warrant was inside. The Court will not second-guess the reasonable tactics of law enforcement. See Saucier v. Katz, 533 U.S. 194, 205 (2001) (noting that officers make "split-second judgments" and that courts should not substitute "the 20/20 vision of hindsight in favor of deference to the judgment of reasonable officers on the scene").[7]

Thus, the Court agrees with the Magistrate Judge that there was no Fourth Amendment deficiency in the police tactics

---

[7] Defendant appears to make a separate legal objection that the Magistrate Judge clearly erred in approving the officers' investigations when they needed to take further steps to verify the address. (Def.'s Resp. 8.) This objection is not substantively different than the factual objection discussed in this section.

Defendant also argues that this Court should draw "negative inferences" from the destruction of a video recording from a police car camera thirty days after the incident. (Id. at 7-8 n. 2.) Defendant cites United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir. 1991), for the proposition that spoliation evidence is "generally admissible because it is probative of consciousness of guilt." The Court fails to see how Maddox supports Defendant's argument. Defendant does not give the Court any indication of what inferences to draw. Evidence that the tape was destroyed was already admitted without objection at the hearing. (Tr. 63-64.)

employed by the officers to verify the address of the house subject to the valid arrest warrant.[8]

**IV. Conclusion**

For the foregoing reasons, the Court, upon de novo review, adopts the Magistrate Judge's Report and Recommendation, and Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED,** this 17th day of December, 2010.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] Defendant failed to address the separate issue of whether suppression is a suitable remedy. "It is not [a court's] job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief." Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009); see also Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 n. 2 (10th Cir. 2008) (same); Corley v. Rosewood Care Ctr., Inc. of Peoria, 388 F.3d 990, 1006-07 (7th Cir. 2004) (same).

Even had the Court found that the officers conducted an improper search, it would not be subject to suppression because of the officers' good faith reliance on their mistaken identification of Harris as their suspect. See Leon v. United States, 468 U.S. 897 (1984) (creating a "good faith" exception to the exclusionary rule when officers relied on a search warrant later determined to lack probable cause). The exclusionary rule is intended to "deter deliberate, reckless, or grossly negligent conduct." Herring v. United States, 129 S. Ct. 695, 702 (holding that the exclusionary rule does not apply to seized evidence during a search incident to arrest where the officers mistakenly believed the defendant had an outstanding search warrant). Here, suppression would serve no great deterrent effect where Officers Cheirs and Robinson shared the good faith belief that they were at the correct house and also exercised restraint in searching the house until they obtained a search warrant.